call the next case for argument. Very well, Ms. Stetson, we'll hear from you first. Thank you, Your Honor. Good afternoon, and may it please the Court, my name is Kate Stetson. I represent the appellants LG and Best Buy in this Rule 23F appeal. The District Court in this case certified a nationwide class of millions of consumers and a nationwide subclass of consumers who bought LG televisions from Best Buy. Their claim that got certified is that LG and Best Buy had made misrepresentations to these millions of consumers over ten years about one technical specification in the televisions, and that has to do with something called the refresh rate. The District Court concluded that those millions of consumer protection and unjust enrichment claims regarding televisions purchased at thousands of stores across the country could be governed by just one state's law per defendant, New Jersey for LG and Minnesota for Best Buy. The District Court also concluded at the same time that Rule 23's predominance requirement was satisfied, and it reached that conclusion despite LG and Best Buy's proffer of direct and specific evidence refuting plaintiff's ability to prove class-wide that their alleged misrepresentations had any causal nexus to the plaintiff's harm. So the District Court's decision suffers, we think, from many of the same flaws that led to the two Rule 23F appeals in St. Jude 1 and St. Jude 2. As in St. Jude 1, the District Court paid too much attention to the location of the defendant's headquarters for purposes of choice of law, and too little attention to the location of the plaintiff's claims. And as in St. Jude 2, the District Court ignored the defendant's proffer of actual direct evidence of individualized issues defeating predominance. Now, this Court will remember, or have noticed, that the St. Jude cases took a winding path up and down and back up to this Court. The Court in St. Jude 1 remanded for a conflicts-of-law analysis. That led to St. Jude 2, where this Court reversed on the Rule 23b3 ground. So our suggestion here, in light of that precedent and the similarity of this case to that precedent, is that the shortest path through this case is to reverse class certification for the reasons articulated in St. Jude 2. The defendant there had presented, and I said, direct evidence that some of the plaintiffs in that class had not received or relied on alleged misrepresentations. That was also a consumer protection case. It was about a medical device. And those pieces of individualized evidence, this Court concluded, rebutted any common inference of a causal nexus that's between the alleged misrepresentation and the harm that was alleged. This Court explained in St. Jude 2 that where a defendant has presented direct evidence that individual plaintiffs didn't rely on those false representations, and this is a quote, it is clear that resolution of the defendant's potential liability to each plaintiff under the consumer fraud statutes will be dominated by individual issues of specialization and reliance. So here, very similarly, LG and Best Buy have presented direct evidence rebutting any ability of the plaintiffs to put forward common proof of a causal nexus between the alleged misrepresentations here to those millions of consumers of millions of LG televisions across the country, or the subclass for that reason pertaining to Best Buy, about a particular technical specification on a television. There's no causal nexus we have shown that's susceptible to common proof between those representations and the harm. So just as in St. Jude, we suggest that the District Court's failure to accept that fact and to recognize that direct proof and to reject predominance on those grounds was error. I can give a couple examples of this proof because this Court in St. Jude was very detailed about noting some instances in the record where the defendants had put forward proof that refuted common claims or the common ability to prove claims. And I'll give a couple good examples. One of them actually is from the District Court's summary judgment order. So this is R Appendix 637. So this is the order that was issued after class certification. So at this point, the Court has concluded that the named plaintiffs are typical of the class and that common issues predominate. That was his decision, of course, that we're here to talk about. But yet we have, in that summary judgment ruling, a plaintiff named Menacchio. And the issue with Mr. Menacchio is that LG and Best Buy have submitted evidence that Mr. Menacchio never saw the representation that is in the heart of this case, which is did a sales tag or something else say that this particular television had a refresh rate of 120 hertz? And I want to be specific about that because the plaintiffs have been specific about that. If the tag didn't say hertz, the plaintiff isn't in the class. And our contention here, based on record evidence, and it's Appendix 1282, is that the tag that was on the television that Mr. Menacchio bought at the store that he bought it at, at the time that he bought it at, after consulting with the sales representative, didn't say 120 hertz. And what the District Court said on summary judgment, and this is why it's so significant, is that whether Mr. Menacchio saw a product tag displaying hertz is a, quote, question of fact that should be decided by a jury, close quote. That's at Appendix 637. So the name, one of the name plaintiffs in this case, who has been found to be typical of this class, has a claim that goes directly to the causal nexus that is at the heart of this case, and it has to be a jury. So if he is an adequate and typical plaintiff, it necessarily follows that that causal nexus between the representation and the harm is an issue that's going to infect at least a portion of the entire class. And just like Mr. Menacchio, there are other absent class members who bought their TVs with different tags at different stores, in different locations that said different things, and they would, if not for a class certification, be subject to the same defense that Mr. Menacchio was, but in a class format, LG and Best Buy won't be able to rebut that evidence, you know, or those contentions as to all of those absent class members. A couple other examples I can give you. Take name plaintiff Huddock. Ms. Huddock purchased multiple televisions, and when she was purchasing a television for her bedroom, the record shows at her deposition, and this is Appendix 249 to 250, that she considered price and size, but she didn't care, that's the quote, about refresh rate. When purchasing a TV for her basement, then she cared about refresh rate. So the significance of the refresh rate technical specification, which if you haven't bought a television lately, I haven't, is apparently one of about 200 different specifications. It's not even uniform across purchases made even by the same plaintiff, let alone susceptible to common proof across the class. So just like Mr. Menacchio, this means that the class is going to contain people like Ms. Huddock, who's now been found typical inadequate, for whom the purchase of the LG television from Best Buy was not driven by a refresh rate, but by some other specification, price or size or brand. There's actually an appendix document at 702 that offers a very things like price and size and brand. So that again breaks that causal nexus in plaintiff's claims. It destroys that causal nexus that's necessary for both the Minnesota Consumer Protection Claim, as this court held in St. Jude II, and the New Jersey Consumer Protection Claim, and the best case for that is the International Union of Operating Engineers case, IUOE, that Mr. Menacchio, they're going to be absent class members who bought their TVs for a reason other than refresh rate. They wanted a different size TV for a different room, and those are going to be subject to the same offense. And again, LG and Best Buy will not be in a position to offer those individualized defenses with respect to those unnamed class plaintiffs, because now they're all lumped into the class. I could go on with more examples. There's example of a former plaintiff named Poppin. There's been a rather evolving cast of plaintiffs in this case, in part because it has been so difficult for the plaintiffs to find someone whose claims are not susceptible to individual refutation. Pardon the background noise. Mr. Poppin, and you can find this at Appendix 431 and 1401, he acknowledged that he read an article years ago in a publication called CNET discussing refresh rate specifications and how different television manufacturers market refresh rates. So he was aware of how refresh rate was marketed by different television manufacturers, and he still bought a television. Now, Mr. Poppin actually agreed in the middle of his deposition to drop his claim, but if it were Mr. Poppin, that would have to happen. And just like Mr. Poppin, all of the other people in the class, the unnamed plaintiffs, would be susceptible, if not for class certification, to those same mini-trials based on whether they had read the CNET article or many others that are available. I pointed you to Appendix 431, but there are others, about refresh rates and how they work. And those are just three examples. I mentioned there's been a rotating cast of plaintiffs. Some of them have dropped out for similar reasons. Some of them have dropped out for reasons like they got a full refund on their television. But there are other examples as well, other pieces of record evidence I'd like to point you to, just to bring home the fact that there are so many pieces of evidence in this case. I would submit more, in fact, than there were in St. Jude. If you look at Appellants Appendix 684, 715, 1282, and 1491 through 1494, you'll find examples of tags for LG products with different language that were posted by different retailers at different times. And remember, for the nationwide class, we're talking about many different retailers. The subclass is people who purchased LG televisions from Best Buy. But you look at a tag from Frye or from Amazon or from other retailers, you will find a diversity of representations on those tags. I'll put it that way. You can also see in the record, and this is all in our brief, there's a good litany at page 42, I believe, of our opening brief. Consumers' decisions were also influenced by, as you would imagine, a wide variety of research and consultation. Best Buy is known, among other things, for the expertness and specialization of its sales teams, the blue appendix, 265, 801 to 803, 1398 to 1402. All plaintiffs who talked about how they consulted with people before they bought the television took those recommendations into account and then bought the television. So you have representations that differ, tags that differ, consultations that differ, reasons that differ, any one of which destroys that purported misrepresentation and the harm. Now, what the plaintiffs said in their responsive brief and what Judge Thunheim said below is that what this court said in St. Jude II was dicta. And it was dicta because of a recent Minnesota Supreme Court case called State v. Minnesota School of Business. I want to be very clear on what Minnesota School of Business did and did not say. Minnesota School of Business did not make any new law beyond the former group health case that is discussed in this court's opinion in St. Jude II. It says, in fact, we reiterate what we held in group health. Direct proof of reliance is not required to offer a causal nexus. And then footnote 7, we hold consistent with the some causal nexus requirement of group health that a plaintiff in a Minnesota consumer fraud case needn't present individualized proof of reliance. But as this court held in St. Jude II, that says nothing about what a defendant is entitled to do. And under basic principles of law in both New Jersey and Minnesota, and we cite these cases in our brief, a defendant is entitled to put on individualized proof of non-reliance, of no causal nexus, to use the phrase that is used in these consumer protection cases. So Minnesota School of Business and group health have nothing to say about that. And the analysis and holding in St. Jude II is completely applicable to this case. If there are no further questions, I'll reserve the remaining of my time. Is there any difference between reliance and causal nexus? You know, I think it does become a sort of a metaphysical question on some level, particularly when you're talking about a consumer fraud claim. And group health actually makes this point. You know, there is discussion in the business that somehow the reliance requirement in a consumer fraud claim has been softened. And there's actually a similar discussion with respect to the New Jersey consumer fraud statute. And I think, again, the best case is that IUOE case I mentioned earlier. But in all respects, when you're talking about a misrepresentation that has caused someone harm, I think what group health said is, yes, there's a, what they said in the phrase is a component of reliance there. We're just not going to call it reliance, and we're not going to require a plaintiff necessarily to put on an individual proof of reliance. But as this court said in St. Jude II, group health and now Minnesota School of Business, which came out later, they say nothing about what a defendant can do. And when you have a Rule 23 ruling that precludes the defendant, ignores the individualized issues of non-reliance, no causal nexus, that is flatly contrary to what this court held in St. Jude II. And we think that this court, again, should reverse. All right. Thank you for your argument. Mr. Gustafson, we'll hear from you. May it please the court, counsel. Good afternoon, your honors. Dan Gustafson on behalf of the plaintiffs. Let me start by saying that in 2010, defendants embarked on a national fraudulent scheme to label their televisions with double the H, the Hertz, refresh rate that was actually true. The fraud that was perpetrated on the consumers nationwide was prepackaged from New Jersey. The price, the labeling, the marketing, the enforcement of the marketing, excuse me, plus the headquarters of LG, all in New Jersey. Best Buy, for its part, adopted the fraudulent scheme first employed by LG. It agreed to do the marketing that LG asked it to do. It did it with Minnesota employees. It did it with Minnesota headquarters. It did it with Minnesota-produced labels, marketing, and enforcement tools. None of this prepackaged fraud emanated from any other state than Minnesota or New Jersey. The defendants knew the Hertz rate was wrong. They knew the Hertz rate was important to consumers. Under their pre-litigation surveys, it was the third most important factor. They knew that if they labeled their televisions with a higher Hertz rate, they could generate more sales price, $50 for 120 Hertz, $100 for 240 Hertz, and they admitted in their report, which was very useful to consumers, that LG would be at a big competitive advantage. And when Best Buy raised questions about the Hertz rates, LG said, it would be a huge concern for us if they would call it out to the public, that is, the real rate. This was not a mistake. Lots of retailers questioned their labeling, which they required of retailers. Lots of retailers asked questions, none of which disclosed the truth. It's important to understand here that plaintiffs don't say all the labels were identical. The Frye labels and the Walmart labels may have been different in part, but they all contained the misrepresentation on the Hertz refresh rate. They labeled the televisions as 120 Hertz or 240 Hertz, which puts them in a different category and a different price point than televisions with a 60 and 120 Hertz rate. Let me give you an example. If you go to a car dealership and you're looking for a pickup truck and the truck is labeled four-wheel drive, it's in a different category than the pickup trucks that are labeled two-wheel drive because it offers a service that is unique to four-wheel drive trucks. The fact that you also bought the truck because it was black, had leather interior, and a towing package is irrelevant to whether you were misled about whether it had four-wheel drive. Here, the district court correctly undertook the two-step process that this court enunciated in St. Jude 1, evaluated the constitutional contacts with the parties, and decided that Minnesota and New Jersey law applied. There can be little doubt that Best Buy and LG expected New Jersey and Minnesota law to apply to their conduct. They are headquartered there, and as I mentioned earlier, all the acts related to these claims occurred there. With respect to the named plaintiffs, they were conditioned by Best Buy that New Jersey and Minnesota law would apply because of the websites. Best Buy's website said that Minnesota law applied to disputes between customers and Best Buy. New Jersey's website said that its privacy policy and website usage was governed by New Jersey law. The warranty card that they put in the television said the televisions were marketed and distributed by LG Electronics, New Jersey. To the extent that the public had any expectation that the law of their state would apply, and it seems to be that they did not, the public websites and that warranty card conditioned them to the law of the state of New Jersey and Minnesota. It wouldn't be unreasonable at all to expect that a consumer in today's age of click-wrap arbitration agreements and click-wrap terms and conditions would expect that the manufacturer's state law would apply. This is consistent with case after case after case from the District of Minnesota, Group Health, Mooney, Code, Lutheran Brotherhoods, and in New York, the Mercedes case. The predictability of law and the interstate order is set out in our brief. I won't go over it other than to say two quick things. The Minnesota Attorney General here has provided an amicus brief that sets forth Minnesota's governmental interests. It's clear that Minnesota has an interest in protecting fraud engaged in by companies that operate out of Minnesota, and the same is true for New Jersey. Let me go to the question of whether common question is predominant. First of all, the claims that plaintiffs bring here for consumer fraud, both in Minnesota and in New Jersey, require three elements. They require an element of, was there a false representation? That's a question of fact that has to be decided after expert testimony. Plaintiffs have an expert. Defendants have an expert. They're going to argue about whether 60 hertz or 120 hertz means what it says it means, and whether the refresh rate that LG claimed it was using through motion is really a refresh rate. That's a question that's common to every class member. The evidence does not vary from class member to class member. Second, they're going to ask the question of whether the LG labeling used across the country is consistent. Best Buy's policy with respect to adopting LG's consistent labeling, the policies of LG with respect to other retailers, the evidence that shows when Walmart didn't want to advertise their TVs like LG wanted to them, that LG corrected them. When Target questioned whether the native refresh rate should be used, LG had a response for them. That evidence comes from defendant's documents, and it comes from nowhere else. There is no individualized evidence to demonstrate that the labeling occurred. All of the plaintiffs in this case testified that they saw the refresh rate, either on the website or on the store placards. All of them testified that the refresh rate in hertz was a factor that made them buy the television, and all of them said that they would have paid less if they had known that the refresh rate was false. The third question, the causal nexus, and this is where counsel for the defendants claims to have evidence. Plaintiffs have a survey that shows that the value of the televisions is less. Defendants dispute that survey, but the district court has three times held that that survey is admissible, satisfies Daubert, and is sufficient for class certification. There are documents from LG that they show that they understood that uprating these TVs in hertz would result in a $50 to $100 upcharge. Best Buy agreed to do what LG wanted it to do, and they all agreed they'd be at a competitive disadvantage if they didn't continue this consistent labeling program. The causal nexus here, it doesn't take away reliance completely. What it takes away is direct proof of individual reliance. As this court recently held in December in the custom hair designs versus Sandy, I have the site for you, it's not in the briefs, 984 Fed 3rd 595. There's a discussion there about RICO, and the custom hair court says the defendant is wrong about the fact that RICO requires individual reliance on mail and wire fraud. That's a RICO under federal law. Then they go on to say, having rejected petitioners argument that reliance is an element of a civil RICO claim based on mail fraud, we see no reason to let that argument in through the back door by holding that the proximate cause analysis under RICO must precisely track the proximate cause analysis of a common law fraud claim. In other words, if the plaintiff doesn't have to prove individual reliance, direct individual reliance of a plaintiff, it seems inconsistent that the defendant can That's what counsel is arguing about here. She's suggesting that somehow because they have a few anecdotal pieces of evidence that suggest that some plaintiff may not have relied on or may not have made that their main consideration for buying the television, that somehow that can be a defense when in fact the plaintiff's not required to prove or plead individual reliance. True enough, the plaintiffs have to demonstrate a causal nexus, and that causal nexus is something that reliance may very well be an issue of, but it won't be an issue of whether Plaintiff Hudak actually relied on it or whether Plaintiff Menascio actually relied on it. By the way, each of the plaintiffs testified that they did rely on it. This case is different from St. Jude for several reasons. One, in St. Jude, as you recall, there were more than one level. This was not a case, this was not a situation where the consumer made a prepackaged sort of fraudulent plan, scheme, if you will, where all of the materials were set in motion from its headquarters. St. Jude had made representations about its heart valve, but it also had physicians that intervened in the process, and the physicians also were telling patients things about the heart valves that were changing their information. Some of the patients didn't hear anything about the St. Jude representations. Some of the patients only heard what their doctor recommended, and as you'll remember, your honors, St. Jude was not, the discovery in St. Jude was not finished. St. Jude had said, we will come forward with representations from all sorts of folks about the fact that they did not represent, not rely on St. Jude's representations. They relied on their doctor's advices instead. Here, the record is closed. There is about three or four pieces of anecdotal evidence that suggests there might be some non-reliance or some reliance on a factor that was other than that of the misrepresentation, but there is not going to be a parade of non-reliance evidence. Surely, defendant is able to attack our evidence of causal nexus, but they can't do it with individualized evidence because there isn't any in the record. They didn't do a survey. They didn't do any sampling of absent class members. They didn't produce any testimony from store owners about whether people were making decisions based on oral representations. The record is simply deplete of any evidence that there is anything here other than the fact tags and the rosters that showed the television hertz rates in hertz. I acknowledged earlier, not all the tags are the same with wording, but they're all the same with hertz rates. Just like in Ray Zurn, this court has got to give scrutiny to the evidence. As you know, the Supreme Court in Tyson Foods said that the fact that there may be a few anecdotal evidentiary disputes that need to be resolved separately before the case can be tried as a class does not prevent predominance. Predominance is present when the plaintiff will produce evidence that is applicable to the entire class. Here, the entire class. That will be LG documents, LG emails, LG testimony, Best Buy documents, Best Buy emails, Best Buy testimony, testimony of our expert on refresh rates, the testimony of our expert on damages, and every bit of that evidence is common to the questions of whether or not LG violated the New Jersey Consumer Fraud Act and whether Best Buy violated the Minnesota Consumer Act. It may be, judges, it may be that we will fail on that. Perhaps the jury will say that the labeling that you say was uniform was not so ubiquitous that it was sure that everybody saw it. That will be a failure of proof. That's not an issue for class certification. The issue for class certification is whether plaintiffs can prove their evidence for their prima facie case through the use of common evidence. I highly recommend, your honors, take a look at the Custom Hair decision. It's interesting because I went back and looked at the District Court decision in Custom Hair. There's no mention of it in the 8th Circuit opinion, but the District Court applied Nebraska law to a national class. This circuit, in the last three months, has affirmed a class certification coming out of Nebraska where they applied the law of one state to a class of 160,000 or so retailers. Custom Hair also has a situation in which there are numerous differences between the parties, and the judge says, yes, but they center on one fraudulent scheme. That's exactly what's true here. I see my time is up. I'm happy to answer questions. Otherwise, I would submit the papers on the briefs. Very well. Thank you for your argument, Mr. Gustafson. Thank you, your honor. Ms. Stetson, we'll give you two minutes for rebuttal. Thank you. I appreciate that, Judge Colleton. I'm happy to answer questions on the conflicts of law issue that Mr. Gustafson spent the first six minutes of his argument on, but if there are no questions on that, I'll turn to St. Jude 2, which didn't come up until about 11 minutes in. Mr. Gustafson made the point that with respect to these claims, one of the arguments that may be susceptible to common proof is the question of a false representation, and I want to point you to page 841 of St. Jude 2, because what this court has said there is, we recognize that plaintiffs may present certain issues that are common to all of their claims. Whether a certain representation was materially false may be amenable to common resolution, but given the individual issues necessarily involved in determining liability and the requested relief there, we think it is clear that common issues do not predominate. So this case is on all fours with St. Jude 2, and what Mr. Gustafson referred to as anecdotal evidence is what we call evidence. There are many examples in the record. I read you a litany that is typical of the class, where there is a debate about whether they relied on a tag, what the tag said, why they bought the television, and so forth. So I don't think it's an answer simply to fall back on the same kinds of contentions that were made in St. Jude 2, that there is some at bottom, some common representation that is enough to drive the class forward. The fact is that there is evidence that the defendants have proffered, that the district court rejected, of a lack of causal nexus between these named plaintiff's claims. We don't need to do more than that. Discovery has closed, and we're very happy with all of the instances that we got, showing that there is no common proof here. Now, Mr. Gustafson recommended that you all look at custom hair design. I recommend you look at it, too, because what you will see there is that that was a common plan to defraud by illegitimately increasing fees nationwide. That is why the class was certified as a nationwide class. That is one of two examples in this entire circuit, the other one being McKeague, of a nationwide fraud class being alleged. And it was the same there. There was an increase in fees across the board, a uniform increase in fees. And I want to point out one thing, if the court would give me just 10 more seconds of leave. What this court said in custom hair design is that the agent's communications to the plaintiffs would be relevant as a defense, but only if the defendant could prove that there was a disclosure of the misrepresentation. The defendant did not introduce summary judgment evidence suggesting that its agents disclosed its plans. Here, of course, we did exactly that, and the case should be decided just as St. Jude II was, and it should be reversed. There are no further questions. All right. Thank you for your argument. Thank you to both counsel. The case is submitted. Thank you. You're welcome. The case is submitted. The court will file a decision in due course.